605 A.2d 1248

**COMMONWEALTH of Pennsylvania**

v.

**Thomas ECK, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 16, 1990.

Filed March 30, 1992.

Anthony M. Mariani, Pittsburgh, for appellant.

Scott A. Bradley, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before ROWLEY, President Judge, and WIEAND and HUDOCK, JJ.

ROWLEY, President Judge:

This is a timely appeal by Thomas Eck from a judgment of sentence imposed following his conviction of involuntary deviate sexual intercourse, indecent assault, and corruption of a minor. Having carefully reviewed the record and considered the arguments presented, we vacate the judgment of sentence and remand this case for a hearing, and either reinstatement of the judgment of sentence or a new trial.

The pertinent procedural history of this case is as follows: Appellant was charged with committing an act of oral intercourse upon his fifteen-year-old foster brother, T.H. ("the victim"), on November 9, 1986. Appellant was 23 years old at the time. Appellant's trial counsel, Patrick J. O'Malia, filed a pretrial motion for discovery pursuant to Pa.R.Crim.P. 305 requesting, *inter alia*, the victim's records that were in the possession of six child service or foster care agencies. These agencies are: the Office of Children, Youth and Families; Childline and Abuse Registry; Western Region Office of Children, Youth and Families; Pressley Ridge Youth Development Extension (PRYDE); Washington County Children and Youth Services; and Pressley Ridge School. Appellant requested the victim's juvenile record, his school records including psychological evaluations, and information relating to the victim's prior sexual conduct.

The trial court ordered the six agencies to produce their records for an *in camera* inspection by the court. PRYDE conceded that it had records of (1) psychiatric evaluations of

T.H., (2) T.H.'s progress reports, and (3) clinical consultations concerning T.H., but it objected to the order requiring their production. Appellant's trial counsel then withdrew his request for PRYDE's records, except those containing verbatim statements by the victim. Consequently, PRYDE submitted only those portions of its records containing verbatim statements by the victim concerning the November 9, 1986 incident. The trial court reviewed, *in camera,* the records submitted by the other five (5) agencies and discussed the contents of those records with appellant's trial counsel. The trial court then gave appellant's trial counsel documents containing the victim's verbatim statements relating to the incident of November 9, 1986. However, appellant's trial counsel was not permitted to view the remainder of the records that had been inspected by the trial court. The trial court did not place on the record any findings or conclusions concerning his *in camera* examination of the records.

Appellant also filed a motion *in limine* seeking to introduce, at trial, evidence of the victim's prior sexual conduct. Specifically, appellant sought to introduce evidence that the victim had a juvenile record for performing oral intercourse on his five-year-old foster brother in a prior foster home. This evidence, appellant contended, would substantiate his defense that T.H. had fabricated the incident with appellant[1] and establish a motive for T.H.'s fabrication. The motion *in limine* was denied. The case proceeded to trial and appellant was found guilty of involuntary deviate sexual intercourse, indecent assault, and corruption of a minor. On October 29, 1987, after filing post-trial motions on behalf of appellant, Patrick J. O'Malia withdrew as appellant's counsel, and Anthony M. Mariani entered his appear-

1. Appellant notes that when T.H. perpetrated the sexual assault on his previous five-year-old foster brother, he was punished by being removed from that foster home, while the five-year-old victim received favorable treatment. Appellant theorizes that T.H. fabricated the incident with appellant in order to avoid punishment for drinking and smoking in violation of PRYDE's rules.

ance as appellant's new counsel.[2] After supplemental post-trial motions were filed and denied, the trial judge sentenced appellant to a term of imprisonment of eleven and one-half to twenty-three months imprisonment and a consecutive five-year term of probation for his conviction of involuntary deviate sexual intercourse. No further sentence was imposed for his conviction of corruption of a minor and indecent assault. After appellant's motion to reconsider and/or modify sentence was denied, appellant filed the instant appeal from the judgment of sentence.

Appellant raises the following issues for our consideration: 1) whether the trial court erred by refusing to allow appellant or his counsel access to agency records; 2) whether the trial court erred in excluding evidence of the victim's prior sexual conduct; 3) whether trial counsel was ineffective for modifying his discovery request; 4) whether trial counsel was ineffective for failing to introduce evidence of a confidentiality agreement between appellant's parents and PRYDE; and 5) whether there was insufficient evidence of forcible compulsion.[3]

## I. ACCESS TO AGENCIES' RECORDS

### A. PRESERVATION

■ Appellant first argues that the trial court erred in not allowing appellant and/or appellant's trial counsel to inspect the records of the five agencies.[4] The Commonwealth claims that appellant has failed to preserve this issue for appellate review. The Commonwealth first con-

---

2. Appellant was represented at his post-trial motions hearing and in this appeal by Anthony M. Mariani and Patrick M. Livingston.

3. We do not separately address appellant's final issue, namely, whether the cumulative effect of trial court errors and trial counsel ineffectiveness deprived him of a fair trial.

4. Appellant's trial counsel withdrew his request for PRYDE's records except those containing verbatim statements by the victim. Therefore, appellant cannot argue that the trial court erred in not allowing appellant or his counsel to inspect these records. Instead, appellant must raise the argument concerning PRYDE's records in the context of the ineffectiveness of his trial counsel. *See* Section III, *infra.*

tends that appellant failed to preserve this issue because, prior to this appeal, he did not argue that denying his trial counsel access to the agencies' records violated his rights of confrontation and compulsory process under the Pennsylvania Constitution. Instead, appellant requested permission to inspect and copy or photograph the records pursuant to Pa.R.Crim.P. 305. *See* Defendant's Request for Informal Pretrial Discovery and Inspection Pursuant to Pa.R.Crim.P. Rule 305, 3/20/87. We conclude that, by requesting to inspect and photocopy these records in his Rule 305 discovery motion and by arguing, in his post-trial motions, that the trial court erred in denying him access to these records, appellant properly preserved this issue. *See Commonwealth v. Miller*, 399 Pa.Super. 180, 582 A.2d 4 (1990) (appellant, who filed a motion to compel discovery pursuant to Pa.R.Crim.P. 305 and who was denied access to psychological report prepared by Rape Crisis Center, entitled to a new trial under *Lloyd, infra.*)

> [We do] not see as viable an approach that would change the standard of review or right of defense counsel to review these documents based upon the manner that the request was made.... [T]he absolute reviewability status would remain even though requested under a Rule 305 motion.

*Id.*, 399 Pa.Superior Ct. at 188, 582 A.2d at 8–9 (Brosky, J., concurring).

The Commonwealth also argues that appellant did not properly preserve this issue because he did not object 1) when the trial court provided him with only the victim's verbatim statements or 2) at trial during the cross-examination of the Commonwealth's witnesses. The Commonwealth has cited no cases to support its contention that a defendant, whose discovery request is denied, must make further objections either when documents are not given to him or during cross-examination. Indeed, such further objections are not required, as they would place an undue burden upon defendants making discovery requests pursuant to Rule 305. Accordingly, we conclude that appellant has properly preserved this issue for appeal.

544

## B. MERITS

We turn now to the substance of appellant's first argument. He contends that the trial court erred by disallowing him access to the records of the six agencies. Alternatively, appellant contends that the trial court erred in failing to conduct a hearing on the discovery motion.

 The courts of this state, as well as the United States Supreme Court, have discussed the issue presented in this case, namely, whether a defendant accused of sexual offenses is entitled to access to the alleged victim's records held by an agency, hospital, or rape crisis center. A review of the relevant cases reveals that a defendant's right to access is dependent upon the scope of any privilege which may protect the confidentiality of the victim's records. After reviewing the record before us, we are unable to determine whether the trial court applied the proper standards, discussed below. We therefore remand to the trial court for an *in camera* hearing during which the principles set forth in the following cases should be applied to determine appellant's right to access to the information he has requested.[5]

 First, a defendant's right to access is dependent upon whether the information is protected by a statutory privilege and whether that privilege is absolute. Information which is protected by an absolute statutory privilege is not subject to disclosure and denial of access to a criminal defendant is required. This non-disclosure rule applies to "information acquired [by a psychiatrist or licensed psychologist] in the course of his professional services in behalf of [a] client...." 42 Pa.C.S. § 5944; *Commonwealth v. Ken-*

---

5. We note that the trial judge did conduct an *in camera* review of the agencies' records before appellant's trial. After that review, the trial judge provided appellant with material concerning the incident underlying the charges at issue, but denied appellant access to information not concerning this incident. However, it appears that the trial court based its decision to deny access on the plurality opinion in *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). As discussed in this memorandum, the principles set forth in *Ritchie* may not be dispositive.

*nedy,* 413 Pa.Super. 95, 604 A.2d 1036 (1992) *(en banc* ); *Commonwealth v. Kyle,* 367 Pa.Super. 484, 533 A.2d 120 (1987), *allocatur denied,* 518 Pa. 617, 541 A.2d 744 (1988). Similarly, "[n]o sexual assault counselor may, without the written consent of the victim, disclose the victim's confidential oral or written communications to the counselor nor consent to be examined in any court or criminal proceeding." 42 Pa.C.S. § 5945.1; *Commonwealth v. Wilson/Aultman,* 529 Pa. 268, 602 A.2d 1290 (1992). The protections set forth in these statutory provisions apply to testimony as well as to records created in the course of the confidential relationship. *See Wilson/Aultman, supra; Kennedy, supra; Kyle, supra.*

■ On the other hand, a privilege which is statutorily enacted, but which is subject to exceptions, is not absolute and access to a criminal defendant may be required. Such a privilege was considered by the United States Supreme Court in *Pennsylvania v. Ritchie,* 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). In *Ritchie,* the defendant was charged with rape, involuntary deviate sexual intercourse, incest, and corruption of a minor after his daughter informed the police that the defendant had been sexually assaulting her for four years. During pre-trial discovery, the defendant sought disclosure of files of Children and Youth Services, a protective agency which investigated the suspected abuse of the defendant's daughter. The trial court refused to order disclosure of the files.

Subsequently, the United States Supreme Court considered Ritchie's case. Although acknowledging that the information the defendant had requested was statutorily protected, the Supreme Court also noted that this protection was not absolute as the statute provided for various exceptions to the confidentiality of the information. Because disclosure was contemplated under certain circumstances, including when disclosure is required by a court order, the Supreme Court concluded that Ritchie was entitled to have the trial court review the files and determine if they contained information which was material to his defense. Ac-

cordingly, the Court remanded to the trial court, with directions to conduct an *in camera* review of the files and to determine whether they contained information which probably would have changed the outcome of Ritchie's trial. If so, a new trial was required.

In *Kennedy, supra,* an *en banc* panel of this Court again considered the privilege discussed in *Ritchie.* However, relying on a statutory provision not discussed by the Supreme Court in *Ritchie,* this Court in *Kennedy* reached a different result.

In *Kennedy,* the defendant was convicted of involuntary deviate sexual intercourse, corruption of minors, and indecent assault. He sought to discover records of the victim's counseling sessions with a licensed psychotherapist as well as the victim's file in the possession of Child Protective Services, a division of the Philadelphia Department of Human Services. The trial court conducted an *in camera* review of the records but did not allow the defendant's trial counsel access to the records.

On appeal, the defendant argued that his confrontation and compulsory process rights under the Pennsylvania Constitution were denied when his trial counsel was denied access to the records. An *en banc* panel of this Court concluded that the defendant was entitled to all information included in the agency's investigating file, except information identifying the reporter of the abuse. The Court in *Kennedy* based this conclusion on the clear language of the statute, rather than on constitutional grounds. Specifically, the Court held that a defendant who is accused of abuse which results in an agency investigation is a "subject of a report [who] may receive, upon written request, a copy of all information except that prohibited from being disclosed by Subsection (c), contained in the Statewide central register or in any report filed pursuant to Section 6." 23 Pa.C.A. § 6340(b).[6]

6. We cannot determine from the record which of the six agencies involved in the present case are governed by the Child Protective

██ Finally, privileges which are not statutorily enacted, but rather are recognized by the common law, must yield to the constitutional rights of a criminal defendant. Such a privilege was considered by the Supreme Court of Pennsylvania in *Commonwealth v. Lloyd*, 523 Pa. 427, 567 A.2d 1357 (1989). In *Lloyd* the defendant was charged with raping a six-year-old victim. The defendant sought to discover and inspect records of the victim's post-rape psychotherapist treatment at a psychiatric institute to show that the victim was delusional and/or hallucinatory and had fabricated the incident. The trial court conducted an *in camera* inspection of the records. However, neither the defendant nor defense counsel was allowed to view the records. The Supreme Court in *Lloyd* held that

under the confrontation clause of the Pennsylvania Constitution, ... the appellant in the instant action was denied his right to confrontation when his attorney was denied access to the contents of the victim's psychotherapist records. In addition we hold that the right to inspect these records is also mandated by the compulsory process clause of the Pennsylvania Constitution.

*Id.*, 523 Pa. at 432, 567 A.2d at 1359. The Court reasoned that, when viewing the records by itself, the trial court " 'would not be reading the statements with the eyes of a trial advocate engaged in defending a client. Matters ... may appear innocuous to some, but [may] have great significance to counsel....' " *Id.*, 523 Pa. at 430, 567 A.2d at 1358, *citing Commonwealth v. Grayson*, 466 Pa. 427, 429, 353 A.2d 428, 429 (1976). The Court concluded that defense counsel was entitled to view the records *in camera*.

In discussing *Lloyd*, the Supreme Court in *Wilson/Aultman* distinguished *Lloyd* from both that case and *Ritchie*. Specifically, the Court stated that *Lloyd*

did not involve a statutory privilege. Rather, the Court in *Lloyd* was concerned with a common law privilege which could not defeat a defendant's constitutional rights.

Services Law, and whose records are therefore governed by the provisions of this law.

Implicit in the distinction drawn by the *Lloyd* court is the recognition that the existence of a statutory privilege is an indication that the legislature acknowledges the significance of a particular interest and has chosen to protect that interest.

*Wilson/Aultman, supra* 529 Pa. at 281–282, 602 A.2d at 1297–98.

As the above discussion reveals, appellant's right to access of the information he has requested depends upon the nature of the information and the scope of the applicable privilege. Because we cannot determine with specificity the nature of the information requested by appellant in the present case, we remand to the trial court with directions to conduct an *in camera* review of the information to which appellant desires access. If, in light of the principles set forth above, appellant's discovery requests were properly denied, he is not entitled to a new trial on this basis. If, however, appellant was improperly denied access to material and admissible information, and the error was not harmless, *see Ritchie, supra,* 480 U.S. at 58, 107 S.Ct. at 1001–02, a new trial is required.

## II. PRIOR SEXUAL CONDUCT

Appellant next argues that the trial court erred in refusing to admit evidence of the victim's sexual conduct in a prior foster home on the ground that it was barred by the Rape Shield Statute, 18 Pa.C.S. § 3104. Appellant contends that the evidence should have been admitted as showing T.H.'s motive for testifying falsely. In his motion *in limine,* appellant alleged that the evidence of T.H.'s past sexual conduct was

directly relevant to demonstrating the alleged victim's bias, attacking his credibility, showing his prejudice, demonstrating his motive, negating the act [with] which Defendant is charged, showing hostility, proving consent and/or for such other reasons as permitted by the Rules of Evidence and relevant case law.

Defendant's Motion to Introduce Evidence of Alleged Victim's Past Sexual Conduct, 9/11/87, at 1. In his offer of proof prior to the trial, appellant explained that the evidence was relevant to appellant's defense that T.H. had fabricated the incident.

> [T]he victim ... has a juvenile record for offenses in which he was the actor or perpetrator in a similar case to the charges at bar.... [The victim] was performing oral sex on this younger boy.... [E]vidence of the juvenile record, probation and the prior act should not be excluded under any Rape Shield Law as it would demonstrate several motives and degrees of bias or prejudice of a victim.... [W]hile [the victim] is on probation with Juvenile and being in fear of being caught for violation of probation of underage drinking, he fabricated this story.... [W]e intend to introduce testimony that the victim was under a disciplinary level at the foster home.... [H]is fear of being under this disciplinary action may suggest to the jury and may raise as a question of fact his motive in fabricating the charges here....

Notes of Testimony (N.T.), 9/14/87, at 3–5.

In *Commonwealth v. Black*, 337 Pa.Super. 548, 487 A.2d 396 (1985) (*en banc*), the Court held that Pennsylvania's Rape Shield Law did not bar evidence of a consensual incestuous relationship between the victim and her brother used to substantiate the defense theory that the victim had fabricated the claim of rape against her father, the defendant, after the defendant had thrown the brother out of the house. The court noted that not all evidence demonstrating bias was admissible, however.

> While we hold that Pennsylvania's Rape Shield Law may not be used to exclude relevant evidence showing a witness' bias or attacking credibility, we do not hold that all material evidence is necessarily admissible. Although logically relevant, evidence tending to show the victim's prejudice or lack of credibility may be excluded if 'it would so inflame the minds of the jurors that its probative value is outweighed by unfair prejudice.'

*Id.,* 337 Pa.Superior Ct. at 557, 487 A.2d at 401 (citations omitted).[7] *See also Commonwealth v. Johnson,* 389 Pa.Super. 184, 195 n. 2, 566 A.2d 1197, 1202 n. 2 (1989) (*en banc*) ("This balancing determination between probative value and unfair prejudice should be made by the trial court at an *in camera* hearing...."), *allocatur granted,* 525 Pa. 643, 581 A.2d 569 (1990). Likewise, in *Commonwealth v. Erie,* 361 Pa.Super. 44, 521 A.2d 464 (1987), *allocatur denied,* 517 Pa. 621, 538 A.2d 875 (1988), the Court found trial counsel ineffective for failing to argue in post-trial motions that the trial court had erred in excluding evidence of the victim's juvenile records which would have supported the defense claim that the victim had fabricated the rape in order to avoid punishment for her curfew violation.

> [T]he jurors were entitled to have the benefit of the defense theory before them in order that they could make an informed judgment as to the weight to place on the complainant's testimony as opposed to the appellant's testimony.

*Id.,* 361 Pa.Superior Ct. at 53, 521 A.2d at 468–69. *See also Commonwealth v. Simmon,* 521 Pa. 218, 555 A.2d 860 (1989) (prosecution witness' juvenile probationary status relevant to show bias).

■ In the instant case, as in *Black* and *Erie,* the jury had to weigh the credibility of both T.H. and the appellant and decide whose testimony was more believable. By excluding evidence of T.H.'s juvenile record and his prior sexual conduct, the trial court prevented appellant "from

7. All seven Judges agreed that the Rape Shield Law could not be used to exclude the evidence of past sexual conduct in *Black.* However, only the plurality (Judges Cavanaugh, Spaeth, and Hoffman) remanded the case for a hearing so that the trial court could balance probative value versus prejudicial effect. Judge Popovich concurred only in the result. Judge Wieand (joined by President Judge Cirillo and Judge Montemuro) filed a concurring and dissenting opinion stating that the trial court's determination to exclude evidence because it was prejudicial constituted an abuse of discretion and that the proper procedure would be to remand the case for a new trial. The balancing test set forth by the plurality in *Black* was adopted by a majority of the court in *Commonwealth v. Johnson,* 389 Pa.Super. 184, 566 A.2d 1197 (1989) (*en banc*), *allocatur granted,* 525 Pa. 643, 581 A.2d 569 (1990).

showing the existence of a possible ulterior motive on the part of the complainant ..., [and] defense counsel was unable to cross-examine the complainant effectively...." *Erie, supra,* 361 Pa.Super. at 52–53, 521 A.2d at 468. Appellant theorizes that, as the perpetrator of a sexual offense, T.H. learned that victims receive more favorable treatment than do perpetrators. Appellant contends that, fearing disciplinary action for violating PRYDE rules, T.H. fabricated the charges against appellant. The jury may have found appellant's theory to be credible or incredible. Nevertheless, the jury had a right to hear the evidence of the victim's juvenile record and/or past sexual conduct, if relevant, and if it substantiated appellant's theory of fabrication, so long as the probative value of the evidence was not outweighed by its unfair prejudicial effect. We therefore conclude that the trial court erred in excluding this evidence outright, and should, on remand, hold an *in camera* hearing to perform the requisite balancing. By our decision, however, we express no opinion as to the admissibility or relevance of any of the proffered evidence or testimony. We leave that decision to the trial court after the appropriate hearing.

## III. INEFFECTIVENESS OF COUNSEL

In his next two issues, appellant alleges that his trial counsel was ineffective. In *Commonwealth v. Rollins,* 525 Pa. 335, 580 A.2d 744 (1990), the Supreme Court set forth the following standard for reviewing an ineffectiveness of counsel claim:

[W]e must first determine whether the issue underlying the claim is of arguable merit. If the claim lacks merit, our inquiry ceases, as counsel will not be deemed ineffective for failing to pursue a baseless or meritless issue. If, however, the claim has merit, we must then determine whether the course of action chosen by counsel had some reasonable basis designed to effectuate his client's interests. Finally, appellant must show that counsel's ineffec-

tiveness so prejudiced his case that he was denied a fair trial.

*Id.*, 525 Pa. at 344, 580 A.2d at 748 (citations omitted).

First, appellant contends that trial counsel was ineffective for withdrawing his request for PRYDE's records, which would have supported appellant's defense theory, discussed above. On the record before us, we cannot determine if the PRYDE records do in fact support appellant's theory. However, because we are remanding for an evidentiary hearing, the trial court can review PRYDE's records to determine if material and admissible information is contained in those records. We note that the principles discussed in Part IB of this opinion should be applied to these records as well.

Appellant also contends that trial counsel was ineffective for failing to introduce into evidence a confidentiality agreement between appellant's parents and PRYDE. He asserts that this agreement would have explained why appellant did not question his mother or the PRYDE supervisor about the specifics of the victim's allegations and why he did not respond with shock to the allegations. A review of the record convinces us that counsel was not ineffective.

First, on cross-examination, appellant was questioned as to why he did not ask his mother or the PRYDE supervisor about the specifics of the victim's allegations. *See* N.T., 9/14/87, at 221–23. If, as he now contends, the reason he did not do so was because of the confidentiality agreement, he had ample opportunity to explain this.

Furthermore, at a post-trial hearing, appellant's trial counsel testified that rather than utilizing the confidentiality agreement to explain appellant's lack of response, he elicited testimony from appellant's mother, and argued in closing, that when a problem arose with a foster child, the family's practice was that appellant's parents would handle the matter themselves rather than involving their natural children. *See* Transcript of Supplemental Hearing on Post-trial Motions, 2/1/89, at 14–18, 22. Counsel also explained

that because appellant's mother told him, albeit in a limited manner, about the victim's allegations, if he had then elicited testimony concerning the confidentiality agreement, the jury might infer that appellant's mother had already breached the agreement and did so because she thought there might be some truth to the victim's allegations. *See id.* at 17–18. This course of action was not unreasonable. For these reasons, we conclude that counsel was not ineffective for failing to elicit testimony concerning the confidentiality agreement.

## IV. SUFFICIENCY OF EVIDENCE

Finally, appellant contends that the evidence of forcible compulsion was insufficient to sustain the guilty verdict for involuntary deviate sexual intercourse. Having thoroughly reviewed the record, we conclude that this issue has been adequately discussed and correctly decided by the trial court, who concluded that the evidence was sufficient to support appellant's conviction. *See* Trial Court Opinion, 3/23/90, at 6–8.

For the foregoing reasons, the judgment of sentence is vacated, and the case is remanded for *in camera* proceedings. If after those proceedings the trial court determines that appellant was entitled to disclosure of materials which were not provided to him, and that non-disclosure was not harmless error, or if the trial court determines that evidence concerning the victim's prior sexual conduct is admissible, a new trial is warranted. Otherwise, the trial court is free to reinstate the conviction.

Judgment of sentence vacated and case remanded for a hearing, and either a new trial or reinstatement of the judgment of sentence. Jurisdiction is relinquished.